## St. Louis, Alton & Springfield R. R. Co., v. Seth F. Crews and Eliza P. O'Hara, Assignees, and Eliza P. O'Hara, Adm'x.

1. RAILROADS—*Liens Against, for Operating Expenses.*—Where railroad property is in charge of a court for administration as a trust fund for the payment of incumbrances, it may declare a lien, prior in right to that of existing mortgages, in favor of claims accruing within a reasonable time prior to the application, on account of wages, supplies and materials necessary to keep the road a going concern; and in this case the court is of opinion that the claim of the intervening petitioner, on account of the cars furnished, is within this rule.

2. CORPORATIONS—*Salaries of Officers Must be Fixed by the Board of Directors.*—In this State an officer of a corporation can not recover salary unless the same is fixed by resolution or by law passed by the board of directors.

**Intervening Petition,** in receivership proceedings. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON,

Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898.

## STATEMENT OF THE CASE.

In October, 1890, a bill was filed in the Circuit Court of Sangamon County, in the name of B. F. Johnson et al. v. The St. Louis, Alton and Springfield Railroad Company, to enforce the collection of judgments recovered by the complainants against the company for costs of construction, aggregating $73,918.32, the appointment of a receiver, etc. Joseph Dickson was appointed receiver. The road was heavily mortgaged, and in May, 1892, a decree of foreclosure was rendered by the court on cross-bills of the Farmers' Loan and Trust Company, trustee on a first mortgage, and the Atlantic Trust Company, trustee in a second mortgage.

Post, Martin & Co., a banking firm in New York, were interested, and for that reason entered into an arrangement with Henry O'Hara, a man of extensive experience in equipping railroads, building cars, etc., residing at St. Louis, to form a syndicate for the purchase of the road at the foreclosure sale, and to reorganize it. In pursuance of that arrangement O'Hara bid off the road for himself and his associates in the syndicate, and it was reorganized under the name of the St. Louis, Chicago and St. Paul Railroad Company, with O'Hara as president. The new company issued and placed in the hands of Post, Martin & Co. $1,200,000 of its first mortgage bonds to be negotiated by them for the purpose of paying the purchase price of the road at the master's sale, and for improving it and placing it in successful operation. Prior to the sale, O'Hara had, for the syndicate, bought from the complainants in the original bill the judgments above mentioned, taking an assignment to himself and paying for them in his own money. After the sale the property was turned over to O'Hara, who, as president and treasurer, had active charge of its management until April, 1893, when he resigned, and turned it over to Post, Martin & Co. During the time he had control he expended several hundred thousand dollars

received by him from Post, Martin & Co., and in earnings in extending the road, buying cars and improving it generally. The terms of the foreclosure sale were not complied with, Post, Martin &' Co. became embarrassed, and as a consequence proceedings were commenced against the new company, whereby the road was, on the 13th of June, 1893, placed in charge of Joseph Dickson and Charles E. Kimball as receivers. A short time afterward the receivers obtained an order of the court authorizing them to issue certificates in an amount not exceeding $400,000, upon the pledge and faith of the property in their possession, and between the time of obtaining such order and the 22d of December, 1895, certificates were issued aggregating $396,273.

On the 7th of October, 1893, O'Hara filed an intervening petition accompanied by an itemized statement of account, in which he sought to have declared in his favor a superior lien, over the mortgages, for the judgments purchased and material furnished during the time he was operating the road, amounting to something like $125,000. Both railroad companies, the Atlantic Trust Company and the receivers, answered by general denial, and filed a cross-bill charging that O'Hara had received moneys largely in excess of the amounts disbursed by him while president and treasurer of the road, and praying for an accounting. The cause was referred to a special master, who took a large amount of testimony, stated an account and reported. Before the report was made, O'Hara assigned forty per cent of his claim to his attorney, Seth F. Crews, and sixty per cent of it to Eliza P. O'Hara, who filed intervening petitions.

After sustaining certain exceptions to the special master's report, the court rendered a decree in favor of the petitioners for $17,592.70 and declared a lien upon the property superior in right to the mortgages upon it.

Patton, Hamilton & Patton, Wise & McNulty, John C. Lanphier, Edward S. Robert, and Eleneious Smith, attorneys for appellant.

Ralph Crews and Seth F. Crews, attorneys for appellees.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This appeal is prosecuted for the purpose of reversing a decree of the Circuit Court for $17,592.70, rendered upon the intervening petition of Henry O'Hara, supplemented by the petitions of his assignees, Seth F. Crews and Eliza P. O'Hara. The court by its decree found that O'Hara was chargeable with $947,517.95, and was entitled to credits to the amount of $965,110.65, leaving a balance due him of $17,592.70, for which he was entitled to a lien prior in right to that of the mortgage bondholders.

Neither party seems satisfied with the decree, and appellees have assigned cross-errors. Appellant complains of the allowance by the court of $69,000 upon the car item for 600 cars furnished, the allowance of $2,350 for car rental and the declaring of a lien upon the railroad property superior to that of the mortgage bondholders. Appellees complain of the disallowance by the court of O'Hara's salary item amounting to $2,250, to the disallowance of a draft for $15,000, dated March 17, 1893, and to the disallowance of a draft for $10,000, dated March 21, 1893.

The $69,000 item was twenty per cent of the cost of construction of 600 freight cars built by the Madison Car Company for the St. Louis, Chicago & St. Paul Railroad Company and was allowed for material furnished by O'Hara. The cars were delivered to the railroad company a few weeks before O'Hara resigned as president. It is undisputed that O'Hara furnished the material and that it went into the building of the cars. The Madison Car Company was paid its proportion for the building of them (seventy-five per cent) through drafts of O'Hara on Post, Martin & Co.; but it nowhere appears in proof that O'Hara was ever paid for his material either by the railroad company or Post, Martin & Co. It is contended, however, that this was a transaction entirely between O'Hara and Post, Martin & Co., and that O'Hara did not intend it as a charge against the railroad company; that he received credit for it upon the books of Post, Martin & Co.; that it was charged against the railroad

company upon their books and had been paid out of the proceeds of the mortgage bond sale made by them.

With reference to the contention that the transaction was a personal one between O'Hara and Post, Martin & Co. and that he did not at first intend it as a charge against the railroad company we deem it sufficient to say, without going into a discussion of the evidence bearing upon that point, that the record does not support such contention. It is true that he included the item in a general account which he once rendered to Post, Martin & Co., but that is satisfactorily explained by his testimony that when he did so he knew Post, Martin & Co. were the fiscal agents of the road and had had the financial management of the enterprise from the start, and that it was at that time understood between them that all his bills and accounts against them and the railroad company would be immediately adjusted and paid.

It does not appear that Post, Martin & Co. had any authority to credit O'Hara's personal account with the item for material furnished for the cars and charge the amount against the railroad company. O'Hara testified that he gave no such authority.

His claim could not be regarded as extinguished, therefore, even though Post, Martin & Co. retained from the proceeds of the bond sale an amount sufficient to pay it. The evidence shows, however, that with the other disbursements from those proceeds there was not a balance sufficient to pay it.

In support of the contention that the Circuit Court erred in holding that the claim for material was a preferred one and had priority over the mortgage to the Atlantic Trust Company, counsel have cited quite a number of decisions by the United States Supreme and Circuit Courts. We do not regard them as supporting the contention. The leading ones are Fosdick v. Schall, 99 U. S. 239, and the Quincy, Missouri & Pacific R. R. Co. v. Humphreys, 145 U. S. 82, and they are valuable to us in determining the question, for the sole reason that they announce the rule that where rail-

road property is in charge of a court for administration as a trust fund for the payment of incumbrances it may declare a lien, prior in right to that of existing mortgages, in favor of claims accruing within a reasonable time prior to the application on account of wages, supplies and materials necessary to keep the road a "going concern." When this railroad came into the hands of O'Hara it was so poorly equipped that it was impossible to make its earnings meet running expenses without adding to its rolling stock. The construction of the six hundred cars was necessary to its successful operation. They were furnished in March, 1893, the present receivers took charge in June, and the intervening petition was filed in September following. The circumstances were such, both as to the necessities of the road for the material and the time within which it was furnished before the application, as to bring the claim within the rule announced in the cases cited above.

Again, the 600 cars enhanced the value of the property for the stockholders and the security for the mortgage bondholders. Furnished as they were, they came within the term "permanent betterments" as used by the courts. Independent of the holding of courts in adjudicated cases similar to this one, equity and good conscience would require that the claim should be declared superior in lien right to that of the mortgage bondholders.

As to the car rental item of $2,350, O'Hara was uncontradicted in his testimony that it was the amount of mileage earned by cars owned by him as reported by the car service agent. When he took charge of the road it needed more rolling stock, but there was no money to buy with. In that emergency he rented to the company some of his own cars. We see nothing irregular in that transaction and nothing in the record to justify an attack upon Mr. O'Hara's integrity or veracity because of the manner in which the claim was presented. It was not made a lien but was simply allowed as a credit against funds which came into his possession while he had charge of the road.

The court properly disallowed the salary item of $2,250.

The claim was for O'Hara's services during the nine months he had charge of the road as president. He was not president by virtue of any order of the court. His authority to hold that office and operate the road came from the new company, the St. Louis, Chicago and St. Paul Railroad Company. The new company had fixed no salary for him and the law is well settled in this State that an officer of a corporation can not recover salary unless the same is fixed by resolution or by-law passed by the board of directors.

The two draft items which appellees contend should have been allowed were drafts drawn on O'Hara by Post, Martin & Co. in March, 1893, and paid by him, one for $15,000 and the other for $10,000. Appellees claim that the money was used for railroad purposes. The basis of that claim is that they were made to appear in O'Hara's credit in a railroad account sent out by Post, Martin & Co. No one pretends to trace the money into expenditures for the railroad. O'Hara had large dealings with that firm independent of matters pertaining to this railroad. Mr. Post, one of the firm, testified that the drafts did not represent money which was used on railroad account and that the railroad had nothing to do with it. He explained that they were originally placed to the credit of O'Hara on his personal account, but were by an error of the bookkeeper subsequently transferred to the railroad account. As soon as the error was discovered they were credited back on the personal account and O'Hara afterward received credit on a statement of his personal account rendered by the firm to him. O'Hara himself treated them as belonging to his personal account as evidenced by an account rendered to the firm by him. With this view it is unnecessary to discuss the point as to whether a money advance should be held a preferred claim.

We see no reason for in anywise changing the decree. Decree affirmed.